**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| QUAWNTINA GREENE, individually and on behalf of all other similarly situated persons, | § § § | |
| | § | Case No. 4:24-CV-02326 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| SITEMETRIC, LLC | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING........................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 3

SUMMARY OF SETTLEMENT TERMS ................................................................................. 5

    I.     Scope of Settlement ................................................................................................ 5

    II.    Settlement Amount................................................................................................. 6

    III.   Settlement Allocations ......................................................................................... 6

    IV.   Structured Payments and Distribution Process ................................................... 7

    V.    Reclassification ..................................................................................................... 7

    VI.   Releases................................................................................................................. 7

    VII.  Attorneys' Fees and Costs and Service Award .................................................... 8

SUMMARY OF ARGUMENT.................................................................................................. 8

    I.     THE COURT SHOULD CERTIFY THE RULE 23 SETTLEMENT CLASS ............................ 8

        A.    Numerosity................................................................................................... 9

        B.    Commonality and Predominance ................................................................. 9

        C.    Typicality ................................................................................................... 10

        D.    Adequacy .................................................................................................... 11

        E.    Superiority.................................................................................................. 11

    II.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA
          COLLECTIVE............................................................................................................ 12

    III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS AND COLLECTIVE
          ACTION SETTLEMENT ............................................................................................. 13

        A.    The Settlement Is Entitled to a Presumption of Fairness ......................... 13

        B.    The Settlement Is Fair, Reasonable, and Adequate Pursuant to Rule 23 ................................. 14

        C.    The Settlement Is Fair and Reasonable and Was Reached as a Result of Contested
            Litigation to Resolve a Bona Fide Dispute. .............................................. 19

CONCLUSION....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Achem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................9

*Alden v. Black Gold Rental Tools, Inc.*,
    2:18 Civ. 215, 2019 U.S. Dist. LEXIS 212457 (S.D. Tex. Nov. 21, 2019) ...........13

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ...................................................................................16

*Beckman v. Key-Bank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................19

*Briz v. Protrans Int'l, LLC*,
    7:22 Civ. 00144, 2023 U.S. Dist. LEXIS 110271 (S.D. Tex. June 27, 2023) ........13

*Briz v. Protrans Int'l, LLC*,
    7:22 Civ. 00144, 2023 U.S. Dist. LEXIS 124965 (S.D. Tex. July 20, 2023) .........13

*Camp v. Progressive Corp.*,
    01 Civ. 2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sep. 23, 2004) ........15, 16, 17

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996) ........................................................................18

*Chano v. City of Corpus Christi*,
    2:17 Civ. 141, 2019 U.S. Dist. LEXIS 153143 (S.D. Tex. July 11, 2019) ........20, 21

*In re Chesapeake Energy Corp.*,
    21 Civ. 1215, 2021 U.S. Dist. LEXIS 158564 (S.D. Tex. Aug. 23, 2021) .............13

*Collins v. Sanderson Farms, Inc.*,
    568 F. Supp. 2d 714 (E.D. La. 2008) .......................................................................20

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................................................18

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ...................................................................................15

*Elson v. Black*,
    56 F.4th 1002 (5th Cir. 2023) ..............................................................................9, 10

*In re Heartland Payment Sys.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................17

*Humphrey v. Hall*,
  22-60227, 2023 U.S. App. LEXIS 7478 (5th Cir. Mar. 29, 2023) ...........................9

*in Mullen v. Treasure Chest Casino, L.L.C.*,
  186 F.3d 620 (5th Cir. 1999) .........................................................................10, 11

*Jasso v. HC Carriers, LLC*,
  5:20 Civ. 212, 2022 U.S. Dist. LEXIS 207043 (S.D. Tex. Oct. 19, 2022).......................16, 20

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) .................................................................................14

*Kemp v. Unum Life Ins. Co. of Am.*,
  14 Civ. 0944, 2015 U.S. Dist. LEXIS 166164 (E.D. La. Dec. 11, 2015) ...............16

*Kincade v. Gen. Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981) .................................................................................14

*Lynn's Food Stores, Inc. v. U.S*,
  679 F.2d 1350 (11th Cir. 1982) .........................................................................2, 19

*Melby v. America's MHT, Inc.*,
  3:17 Civ. 155-M, 2018 U.S. Dist. LEXIS 233989 (N.D. Tex. June 22, 2018).......................17

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ............................................................................3, 15

*ODonnell v. Harris Cnty., Texas*,
  16 Civ. 1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ..................................14

*Plunkett v. Firstkey Homes LLC*,
  3:23 Civ. 2684-L-BN, 2024 U.S. Dist. LEXIS 224946 (N.D. Tex. Nov. 21,
  2024) .....................................................................................................................18

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .....................................................................15, 17, 18

*Robertson v. Monsanto Co.*,
  287 F. App'x 354 (5th Cir. 2008) .........................................................................12

*Shaw v. CAS, Inc.*,
  5:17 Civ. 142, 2018 U.S. Dist. LEXIS 136394 (S.D. Tex. Jan. 31, 2018) .............20

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993)......................................................................14, 15

*Skinner v. Hunt Military Cmtys. Mgmt. LLC*,
  22 Civ. 00799-JKP, 2023 U.S. Dist. LEXIS 181462 (W.D. Tex. Jan. 23, 2023)..............10, 11

*Slade v. Progressive Sec. Ins. Co.*,
  856 F.3d 408 (5th Cir. 2017) ................................................................................................11

*Swales v. KLLM Transp. Servs., LLC.*,
  985 F.3d 430 (5th Cir. 2021) ................................................................................................13

**Statutes**

29 U.S.C. § 216.......................................................................................................................13

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ................................................................ *passim*

Ohio Rev. Code Ann. § 4111.03 ............................................................................................10

Or. Rev. Stat. Ann. § 653.261 ...............................................................................................10

Va. Code Ann. § 40.1-29.2 ....................................................................................................10

Wash. Rev. Code Ann. § 49.52.070 .......................................................................................10

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

NEWBERG ON CLASS ACTIONS (3d ed. 1992) ..........................................................................10

Or. Admin. R. 839-020-0030..................................................................................................10

**STATEMENT OF NATURE AND STAGE OF THE PROCEEDING**

On February 25, 2025, the Court entered an Order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement and authorized Notice of the Settlement to be issued to 1,046 class and collective members regarding their claims against Defendant Sitemetric, LLC ("Sitemetric") under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and applicable state wage and hour laws of Ohio, Oregon, Virginia, and Washington. Dkt. 18, Preliminary Approval Order. In granting preliminary approval, the Court found the Parties' allocation plan and Settlement Agreement and Release, Dkt. 17-2A, (the "Settlement Agreement" or "S.A.") to be "fair, reasonable, and adequate." *Id.* at 4-5. Upon receiving Notice, the Plaintiffs[1] reacted favorably to the Settlement, confirming that they agree with the Court's assessment. Indeed, 563 Participating Plaintiffs[2], or over 53% of the eligible Plaintiffs, will recover money as part of the settlement. Further, only two of the Plaintiffs objected to the Settlement and one Class Member opted out of the Settlement. *See* Ex. 2, Declaration of ILYM Group, Inc. ("ILYM Decl.") ¶¶ 13-14.

With the entry of the Final Approval Order and approval of the Settlement Agreement, Sitemetric will pay ▮▮▮▮▮▮ to resolve the Participating Plaintiffs' claims. *See* Dkt. 1. After deducting any Court approved settlement administration costs, a Service Award for the Named Plaintiff, and Class Counsel's attorneys' fees and costs, the Net Settlement Amount of at least ▮▮▮▮▮▮ will be distributed to Participating Plaintiffs on a pro rata basis, with a minimum payment of $50. S.A. § X; ILYM Decl. ¶ 18. Participating Plaintiffs' recovery under the Settlement is substantial with Participating Plaintiffs recovering on average, after accounting for

---

[1] "Plaintiffs" refers to Opt-in Plaintiffs, Class Members, and Putative Collective Members. S.A. § I(I).
[2] "Participating Plaintiffs" refers to all Opt-in Plaintiffs who do not opt out, and Class Members and Putative Collective Members who file a valid claim form. S.A. § I(J).

fees and costs, of over ███ Ex. 1, Declaration of Matt Dunn ("Dunn Decl.") ¶ 77. In exchange for these payments, Participating Plaintiffs will, as set out more fully in the Settlement Agreement, release and waive any claims that arose when they were employed by Sitemetric until November 25, 2024, under federal, state, and/or local or other wage and hour laws related to this litigation. S.A. § VI. Additionally, Sitemetric has reclassified its workers as employees.

Accordingly, Plaintiffs respectfully request the Court (i) grant final approval of the Settlement and issue a ruling that the Settlement Agreement is final, fair, reasonable, adequate and binding on all Participating Plaintiffs; (ii) enter the Final Approval Order, in the form attached as Exhibit 3; (iii) enter the Final Judgment, in the form attached as Exhibit 4; (iv) dismiss this case with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of the Settlement Agreement; (v) grant final certification of the Rule 23 Class for settlement purposes; (vi) grant final certification of the FLSA collective for settlement purposes; (vii) confirm as final the appointment of Plaintiffs' counsel as Class Counsel; (viii) confirm as final the appointment of the Current Named Plaintiff as Class Representative; (ix) find that the Class Notice constituted the best notice practicable under the circumstances, was accomplished in all material respects, and fully met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution and any other applicable law; and (x) approve the Individual Release for the Named Plaintiff.

### STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1.  Should the Hybrid Class and Collective Settlement Agreement be approved by the Court? Fed. R. Civ. P. 23*; Lynn's Food Stores, Inc. v. U.S*, 679 F.2d 1350 (11th Cir. 1982).

The standard of review is abuse of discretion. *Newby v. Enron Corp*., 394 F.3d 296, 300 (5th Cir. 2004).

## FACTUAL AND PROCEDURAL BACKGROUND

Between October 20, 2023 and February 5, 2024, 14 Sitemetric workers filed arbitration demands against Sitemetric, alleging that that Sitemetric misclassified them as independent contractors and failed to pay overtime premium wages for hours worked over 40 in a workweek. They filed in arbitration because they had signed an arbitration agreement. Dunn Decl. ¶¶ 6-7.[3]

In February 2024 the Parties agreed to explore the possibility of settlement and requested that the arbitrations already filed be held in abeyance. The Parties engaged in seven months of negotiations with Mediator F. Bradford Stillman, a retired federal magistrate judge. *Id.* ¶¶ 8-9. The Parties conducted a full day mediation on April 29, 2024. Before mediation, Sitemetric provided wage and hour data for all of the workers who had filed claims in arbitration, and the additional eight individuals who came forward to pursue their claims. *Id*. ¶ 10.

As a result of the April mediation, which did not produce a resolution, the parties agreed to explore the possibility of class-wide settlement. *Id*. ¶ 11. To further discussions, Sitemetric provided class-wide wage and hour data for all Sitemetric workers who logged their time through the "When I Work" application, approximately 1,377 Sitemetric workers. *Id*. ¶ 12. Class Counsel analyzed the data to prepare a detailed demand and evaluation of the claims in the case, which included a calculation of each individual worker's damages under federal and state law. *Id*. ¶ 13.

Sitemetric consented to tolling the FLSA and state law statutes of limitations as of April 29, 2024, and the filing of a federal complaint for the purposes of settlement. *Id*. ¶ 14. Plaintiffs filed the complaint on June 20, 2024, alleging that Sitemetric misclassified its employees as independent contractors and thus failed to pay Plaintiffs overtime under the FLSA and wages under the state laws of Ohio, Oregon, Virginia, and Washington. *Id*. ¶ 15.

---

[3] Sitemetric agreed to the filing of this case for settlement purposes with the Plaintiff only and has not waived any other rights or ability to compel arbitration.

The Parties held a second full-day mediation on September 30, 2024, but were unable to reach a settlement. *Id.* ¶ 16. ███████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 17. Plaintiffs hired a highly qualified forensic accountant, Dr. Thomas L. Porter, to review Sitemetric's finances. In October, Dr. Porter met with Sitemetric's CEO and Vice President of Finance and Accounting and the Parties' counsel to further vet the documents. *Id.* ¶ 18.

The Parties continued to negotiate through the mediator, and on December 3, 2024, the Parties reached an agreement to resolve the dispute and memorialized the material terms in a term sheet and subsequently negotiated a comprehensive settlement agreement. *Id.* ¶¶ 19-20. In addition to the Settlement Agreement submitted here, the global settlement includes the resolution of 22 claimants in arbitration, who will not participate in this action. Those claims were settled and approved by arbitrator Lisa Bertini. *Id.* ¶ 21.

On January 20, 2025, the Parties fully executed the Settlement Agreement. *Id.* ¶ 20. On February 14, 2025, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement. Dkt. 17. On February 25, 2025, the Court entered an Order granting the motion, preliminarily approving the Settlement, provisionally certifying the FLSA collective and Rule 23 Class, appointing Plaintiffs' Counsel as Class Counsel, and approving the form and manner of Class Notice. Dkt. 18. The Court scheduled a final fairness hearing for June 17, 2025, and ordered Plaintiffs to file a motion for final approval, a motion for an award of attorneys' fees and reimbursement of expenses and for any Service Awards 10 days before the hearing. *Id.* ¶ 18.

In the Preliminary Approval Order, the Court authorized ILYM Group, Inc., to act as Settlement Administrator. *Id.* ¶ 21. In accordance with the Settlement Agreement and the Court's

order, ILYM distributed the Notice and settlement forms by U.S. First Class Mail and e-mail on March 11, 2025. ILYM Decl. ¶¶ 8-9. To facilitate the notice process, the Parties sent the Settlement Administrator a list of all Plaintiffs and their last known addresses, personal email addresses, and the last four digits of their Social Security Numbers (where available). *Id.* ¶ 5. The Settlement Administrator used standard skip tracing devices to verify the accuracy of addresses before the initial mailing date to ensure that the Settlement Forms were sent to Plaintiffs at the address most likely to result in immediate receipt. *Id.* ¶ 6. Of the 1,033 Notices mailed to Plaintiffs, 140 were returned undeliverable. *Id.* ¶ 10. The Settlement Administrator was able to locate updated addresses for 84 Plaintiffs and remailed them Notice. *Id.* ¶¶ 10-11. A total of 56 Notice Packers were deemed undeliverable. *Id.* ¶ 12. Thus, the Settlement Administrator successfully delivered Notice to 95% of the Plaintiffs. The Settlement Administrator also distributed Notice by text message on March 18, 2025, and a reminder on April 10, 2025. *Id.* ¶ 9.

Following the 60-day Opt-Out Period, only two Plaintiffs objected to the Settlement and one opted out. *Id.* ¶¶ 13-14. One objection is deficient, and takes issue with the timing of the payments, and the fact that the settlement does not address any damages from December 2024. Ex. B to ILYM Decl. The other person does not object to any of the settlement terms, but instead criticizes Sitemetric's labor practices. Ex. C to ILYM Decl. Class Counsel has spoken to the objectors, and both expressed that they do not oppose the settlement. Dunn Decl. ¶ 29. Sitemetric denies all allegations in the second objection, which are not at issue here.

## SUMMARY OF SETTLEMENT TERMS

### I.    Scope of Settlement

The Settlement Agreement resolves the claims of the Named Plaintiff, Opt-Ins, and all Participating Plaintiffs, including FLSA Collective Members and Rule 23 Class Members from

Ohio, Oregon, Virginia, and Washington who do not opt out of the Settlement. Dunn Decl. ¶ 33.

The list of Employee IDs for the Opt-Ins, FLSA Collective Members, and Rule 23 Class

Members are attached to the Settlement Agreement as Exhibits 1, 2, and 4.

## II.    Settlement Amount

The Settlement Agreement creates a non-reversionary fund of ██████████

("Settlement Amount") to settle the action. Settlement Agreement ("S.A.") § II. Class Counsel

may seek an award of fees of up to 33.33% of the Settlement Amount plus reasonable costs, to be

paid out of and deducted from the Settlement Amount. S.A. § IV(A). Additionally, Plaintiffs may

seek, and Sitemetric will not oppose, a Service Award of up to $25,000 to be paid out of the

Settlement Amount to Named Plaintiff Greene, in addition to her settlement share. S.A. § V(C).

Any Court-approved Service Award, settlement administration costs, and attorneys' fees and

costs will be deducted from the Settlement Amount, resulting in the Net Settlement Amount that

will be distributed to the Participating Plaintiffs. S.A. § II, IV, V(C).

## III.   Settlement Allocations

The Net Settlement Amount will be distributed to Participating Plaintiffs on a pro rata

basis as set forth in Exhibit 5 of the Settlement Agreement. The allocations represent the Parties'

compromise in resolving Plaintiffs' claims. Plaintiffs' Individual Allocations are calculated for all

hours they worked over 40 in a workweek within the applicable statute of limitations. Dunn

Decl. ¶ 50. Class counsel used Sitemetric's payroll and time records to calculate the overtime

backpay in accordance with the applicable law under the FLSA and applicable state wage and

hour laws. *Id*. ¶ 51. Individual Allocations unclaimed by Class Members and Putative Collective

members will be redistributed among those who file a claim form and Opt-In Plaintiffs on a pro

---

[4] Combined with the individual arbitration settlement, the gross settlement is ██████████.

rata basis. Any settlement checks left unnegotiated shall be sent to the applicable state department of unclaimed funds in the name of the non-cashing claimant. S.A. § II (D). Importantly, none of the settlement funds will revert back to Sitemetric.

**IV.    Structured Payments and Distribution Process**

The Settlement Agreement calls for Sitemetric to make structured payments: one payment of ▮▮▮▮▮ 14 days after final settlement approval (less any amounts paid in the arbitration settlement), and three payments of ▮▮▮▮ one year, eighteen months, and two years after final settlement approval. S.A. § X(B). Plaintiffs will receive their pro rata shares from the first three payments, with certain minimum payments each round, as described in the agreement. S.A. § X(B)(1)-(3). Class Counsel will receive the bulk of their attorneys' fees from the final payment. S.A. § X(B)(1)-(4). The Named Plaintiff will receive any Service Award spread amongst all four payments. S.A. § X(B)(1)-(4).

**V.    Reclassification**

The Settlement Agreement provides that Sitemetric reclassify its workers as employees for wage and hour purposes as of January 1, 2025. S.A. § III. Sitemetric has confirmed that it reclassified its workers, and now Access Control Officers (and others) are treated as employees for wage and hour purposes.

**VI.    Releases**

Upon Final Approval of the Settlement, each Participating Plaintiff and class member who did not opt out will, as set out in the Settlement Agreement, release Sitemetric from any and all wage and hour claims and wage and hour causes of action through November 25, 2024, as fully set out in the Agreement. *See* S.A. § VI. Putative Collective Members who did not file a claim form did not release any claims, but had their claims tolled.

**VII.    Attorneys' Fees and Costs and Service Award**

Class Counsel is seeking reimbursement from the Settlement Amount for attorneys' fees of up to one-third of the Settlement Amount, plus actual litigation costs incurred, to compensate them for time spent litigating this case without payment to date. Plaintiffs are also requesting the Court approve a Service Award of $19,000 in recognition of the Named Plaintiff's service on behalf of the Class in addition to her Individual Allocation. S.A. § V. Pursuant to Rules 23(h) and 54(d)(2), Class Counsel filed a separate motion for approval of attorneys' fees and costs and the Service Award. The Settlement Agreement is not contingent on the amount of attorneys' fees and costs ultimately awarded by the Court and any fees not awarded will revert to the Class. S.A. § IV. The Settlement Notice provided Plaintiffs with information regarding the fees and costs and none of the Plaintiffs objected to the request for attorneys' fees and litigation expenses or the Service Award. S.A. Exhibits 7-9; ILYM Decl. ¶¶ 14-15.

## SUMMARY OF ARGUMENT

The Court should grant final approval of the proposed class and collective action settlements because the settlement is fair, reasonable, and adequate, and is a result of contested litigation and resolves a bona fide dispute. In doing so, the Court should certify the Rule 23 Class because it readily satisfies the elements of numerosity, commonality, adequacy, predominance, and superiority, and certify the FLSA collective because its members are similarly situated.

## ARGUMENT

**I.    THE COURT SHOULD CERTIFY THE RULE 23 SETTLEMENT CLASS**

Before granting final approval of a class action settlement, the Court must determine whether the proposed settlement class can be certified. *Achem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). The Court provisionally certified the Rule 23 Settlement Class for settlement

purposes. Dkt. 18 at ¶ 6. Nothing has changed in the interim that would call into question the propriety of that ruling. Dunn Decl. ¶ 25. Plaintiffs contend and Sitemetric agrees for settlement purposes that all the criteria under Rule 23(a) and (b)(3) continue to be met.

Out of an abundance of caution, Plaintiffs reiterate their arguments in support of Rule 23 class certification from their Preliminary Approval Motion. Class certification requires plaintiffs to satisfy four requirements under Rule 23(a):

> (1) numerosity, meaning that the class must be 'so numerous that joinder of all members is impracticable'; (2) commonality, meaning that there must be 'questions of law or fact common to the class'; (3) typicality, or that the claims or defenses of the representative parties must be 'typical of the claims or defenses of the class'; and (4) adequacy of representation, meaning that the representative parties must 'fairly and adequately protect the interests of the class.'

*Humphrey v. Hall*, 22-60227, 2023 U.S. App. LEXIS 7478, at *7-8 (5th Cir. Mar. 29, 2023) (quoting Rule 23). "Rule 23(b)(3) then authorizes class certification where (1) questions common to the class members predominate over questions affecting only individual members, and (2) class resolution is superior to alternative methods for adjudication of the controversy." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (internal quotation omitted).

## A. Numerosity

Numerosity is generally presumed when the potential number of class members exceeds 40. *See* NEWBERG ON CLASS ACTIONS § 3.05, at 3–25 (3d ed. 1992) (suggesting that a class of more than 40 "should raise a presumption that joinder is impracticable"), *cited with approval in Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620, 624 (5th Cir. 1999). Here, the settlement class consists of 762 members, with more than 40 in each covered state.

## B. Commonality and Predominance

To satisfy commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Similarly, Fed. R. Civ. P. 23(b)(3) requires that "questions of law or fact

common to class members predominate over any questions affecting only individual members."

Consequently, the commonality requirement "is subsumed under, or superseded by, the more

stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other

questions." *Elson*, 56 F.4th at 1006 (5th Cir. 2023) (quotation omitted).

The same common issues underlly all Class Members' claims. The Named Plaintiff's and

Class Members' claims arise from the same legal question of whether they were misclassified,

and whether they were entitled to and received overtime premium pay. Plaintiffs' claims are

largely the same whether they arise under the state laws of Ohio, Oregon, Virginia, or

Washington. *See* Ohio Rev. Code Ann. § 4111.03 (requiring overtime pay of time and one-half

for hours worked over 40 in a workweek); Va. Code Ann. § 40.1-29.2 (same); Wash. Rev. Code

Ann. § 49.52.070 (same); Or. Rev. Stat. Ann. § 653.261, Or. Admin. R. 839-020-0030 (same).

Courts in this circuit have found commonality and predominance in cases about whether

the defendant's wage payment policy "complied with the FLSA … and related state wage laws."

*Skinner v. Hunt Military Cmtys. Mgmt. LLC*, 22 Civ. 00799-JKP, 2023 U.S. Dist. LEXIS 181462,

at *2 (W.D. Tex. Jan. 23, 2023). Here, as in *Skinner*, "[e]ach of the state laws that [Plaintiff] has

sued upon have the minimal common and predominate element of requiring … overtime

premium payment for hours worked in a workweek." *Id.* Thus, as the Court found in its

Preliminary Approval Order, the Class satisfies commonality and predominance. Dkt. 18 ¶ 6.

**C. Typicality**

To satisfy the typicality requirement, the class representatives' claims must be "typical of

the claims . . . of the class." Fed. R. Civ. P. 23(a)(3); *Mullen*, 186 F.3d at 625.  This test is "not

demanding." *Id*. The Named Plaintiff and Class Members' overtime claims arise from the same

claim that Sitemetric allegedly misclassified them and failed to pay them overtime premium wages. Dunn Decl. ¶ 82. Accordingly, the Named Plaintiff's claims are typical of the Class.

### D. Adequacy

The adequacy analysis "encompasses three separate but related inquiries: (1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quotation omitted).

As the Court previously found, Class Counsel and the Named Plaintiff fulfill the requirements of each inquiry. Dkt. 18 at ¶¶ 7-10. Class Counsel have done substantial work identifying and investigating Plaintiffs' claims and have extensive knowledge of the applicable wage-and-hour law, given their experience successfully litigating class and collective wage-and-hour cases on behalf of workers, including many misclassification cases. Dunn Decl. ¶¶ 105-107, 128. The Named Plaintiff is a member of the FLSA Settlement Collective and the Rule 23 Settlement Class, whose claims are all based on Sitemetric's same conduct and policy of allegedly misclassifying workers and failing to pay them an overtime premium. Further, the Named Plaintiff has spent substantial time assisting Class Counsel in adjudicating the claims, including consulting with Class Counsel and providing information and documents, reviewing the complaint, and participating in mediation and settlement. *Id*. ¶¶ 88-89. The history of settlement negotiations and the efforts of the Named Plaintiff and Class Counsel to bring this case to a successful resolution demonstrate that they have adequately represented the class.

### E. Superiority

"Rule 23(b)(3)'s superiority requirement asks whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Robertson v.*

11

*Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008) (quoting the Rule). To evaluate superiority, Rule 23(b)(3) provides a non-exhaustive list of factors for courts to consider, including: class members' interest in bringing individual actions; whether any class members have already initiated any individual actions; the desirability of concentrating the litigation; and the difficulties of proceeding as a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, class adjudication is superior to individual adjudication because a class action is the most efficient and fair method for adjudicating and resolving the Class Members' claims. The Settlement Class contains approximately 762 workers with relatively modest claims, and absent certification, Plaintiffs would have to conduct individual arbitrations, which would likely prove too costly and burdensome for the individuals and Sitemetric.

Thus, as the Court previously found, Plaintiffs have met the test for superiority, and the Court should therefore certify the Rule 23 Class for settlement. Dkt. 18 ¶ 6.

## II. THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA COLLECTIVE

To approve a FLSA collective settlement, courts must also certify the FLSA collective. *See Briz v. Protrans Int'l, LLC*, 7:22 Civ. 00144, 2023 U.S. Dist. LEXIS 124965, at *6 (S.D. Tex. July 20, 2023). A FLSA collective action may be maintained "by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *see also Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 433 (5th Cir. 2021).

For the same reasons that Plaintiffs met the standard to certify the Rule 23 class, Plaintiffs satisfy the standard to certify the FLSA collective for settlement, as this Court has previously found. Dkt. 18 ¶ 16–17. The Opt-in and Putative Plaintiffs are similarly situated to the Named Plaintiff in that they all allege they were subject to Sitemetric's same unlawful policy of misclassifying them as independent contractors and failing to pay them overtime premium pay.

Dunn Decl. ¶¶ 82. Courts in this District have approved certification for settlement purposes in substantially similar circumstances. *See, e.g., Briz v. Protrans Int'l, LLC*, 7:22 Civ. 00144, 2023 U.S. Dist. LEXIS 110271, at *5 (S.D. Tex. June 27, 2023) (accepting parties' stipulated collective for settlement because members were denied appropriate overtime wages under the same employer plan).

## III.    THE COURT SHOULD APPROVE THE PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT

Under Rule 23(e), a class action may be settled "only with the court's approval." *In re Chesapeake Energy Corp.*, 21 Civ. 1215, 2021 U.S. Dist. LEXIS 158564, at *13 (S.D. Tex. Aug. 23, 2021). FLSA Collective Action settlements may similarly be approved by the Court. *Alden v. Black Gold Rental Tools, Inc.*, 2:18 Civ. 215, 2019 U.S. Dist. LEXIS 212457, at *3 (S.D. Tex. Nov. 21, 2019). Settlement Approval has three steps: "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). Plaintiffs request that the Court approve the Class and Collective Action Settlement.

### A.    The Settlement Is Entitled to a Presumption of Fairness

"Particularly in class action suits, there is an overriding public interest in favor of settlement." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quotation omitted). Thus, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *ODonnell v. Harris Cnty., Texas*, 16 Civ. 1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019) (citation omitted).

The circumstances surrounding the Settlement overwhelmingly support the application of an initial presumption of fairness. First, the Settlement was reached after seven months of negotiations through an experienced mediator, including two full-day mediations. *See Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness," and such settlements "are likely non-collusive.") (quotations omitted). Second, the Parties engaged in significant informal discovery during settlement discussions, including Sitemetric's production of wage and hour data for its entire hourly workforce, which permitted Plaintiffs to calculate Plaintiffs' unpaid overtime wages. Dunn Decl. ¶¶ 12-13. Sitemetric also produced business and financial records, which Class Counsel heavily vetted. *Id.* ¶¶ 17-18. Finally, Class Counsel are experienced wage and hour litigators and have thoroughly reviewed the relevant data for each individual Class Member, assessing the litigation risks and Sitemetric's finances to determine the rational settlement value of this case. *Id.* ¶¶ 75-79, 105-108.

Moreover, the settlement has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class. All Plaintiffs will receive a pro rata share of the Settlement Fund calculated based on the number of hours they worked over 40 in workweeks, or a minimum payment of $50. They are treated relatively equally under the agreement. For the reasons discussed in Part B below, the settlement is fair, reasonable, and adequate, and the Court should approve the settlement.

### B.  The Settlement Is Fair, Reasonable, and Adequate Pursuant to Rule 23

Rule 23(e)(2) states that a court may approve a settlement proposal that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." In analyzing whether a class action settlement is fair and reasonable, courts in the Fifth Circuit consider the six factors set forth in *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983):

(1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

"The gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby*, 394 F.3d at 301. Moreover, there is an "overriding public interest in favor of settlement" in class actions. *In re Deepwater Horizon,* 739 F.3d 790, 807 (5th Cir. 2014). Here, the six *Reed* factors support approval, and the Court should approve the settlement.

### i.    Factor 1: Evidence That the Settlement Was Obtained by Fraud or Collusion

As discussed in Part A above, the Parties agreed to the proposed settlement only after months of negotiations through a highly qualified mediator, and an exchange of significant informal discovery. There is no evidence that the Parties have engaged in fraud or collusion. *See Shell Oil*, 155 F.R.D. at 559). Moreover, there is "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Camp v. Progressive Corp*., 01 Civ. 2680, 2004 U.S. Dist. LEXIS 19172, at *25 (E.D. La. Sep. 23, 2004).

### ii.    Factor 2: The Complexity, Expense, and Likely Duration of the Litigation

Courts conclude that the second factor favors settlement where it "avoids the risks and burdens of potentially protracted litigation." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). The Settlement here resolves a complex wage-and-hour class and collective action that would have been lengthy and expensive to continue litigating. *See Camp*, 2004 U.S. Dist. LEXIS 19172, at *27 (recognizing the complexity of litigation in a misclassification case).

This case involves the claims of 1,045 Class and Putative Collective members under the FLSA and the wage and hour laws of four states. Dunn Decl. ¶ 69. The Parties have already undertaken considerable time and expense in evaluating the claims and defenses in this case and

15

engaging in vigorous settlement discussions. Further litigation without settlement would necessarily result in additional expense and delay. *Id.* ¶¶ 70-71; *see Kemp v. Unum Life Ins. Co. of Am.*, 14 Civ. 0944, 2015 U.S. Dist. LEXIS 166164, at *14-15 (E.D. La. Dec. 11, 2015) ("Class action litigation is inherently complex" and thus "inevitably costly in terms of both time and money."). And because Sitemetric required Plaintiffs to sign arbitration agreements with class and collective action waivers, it is unlikely they would recover any money without a settlement unless they filed claims in arbitration. Indeed, Sitemetric, with the sole exception of this Settlement, does not waive any rights to compel arbitration.

### iii.    Factor 3: The Stage of the Litigation and Available Discovery

In considering this factor, courts evaluate whether the proceedings have sufficiently developed for the Parties to have "enough information to evaluate the respective strengths and weaknesses of their case." *Jasso v. HC Carriers, LLC*, 5:20 Civ. 212, 2022 U.S. Dist. LEXIS 207043, at *11 (S.D. Tex. Oct. 19, 2022). Courts in this circuit have approved settlements based on informal discovery so long as the settlement is not "the product of uneducated guess work," and that "[a]t the point the parties reached the settlement, they had ample information with which to evaluate the merits of the competing positions." *Melby v. America's MHT, Inc.*, 3:17 Civ. 155-M, 2018 U.S. Dist. LEXIS 233989, at *27 (N.D. Tex. June 22, 2018) (quotation omitted).

The Parties conducted significant informal discovery and contentiously negotiated the settlement for over seven months, fully evaluating the relative strength of the claims and defenses and reach a settlement. Sitemetric produced, and Plaintiffs analyzed, payroll data for all workers in the class definition, a total of 1,377 workers, and Class Counsel interviewed dozens of workers about their job duties, pay, and hours worked. Dunn Decl. ¶¶ 12-13, 70. Thus, the Parties engaged in sufficient discovery to appreciate the merits of the case.

### iv.    Factor 4: The Probability of Plaintiffs Prevailing on the Merits

For this factor, courts evaluate the risks of litigation, including obtaining and maintaining a class, by weighing the likelihood of success and potential damages award against the settlement's immediate recovery. *See Reed,* 703 F.2d at 172; *Camp*, 2004 U.S. Dist. LEXIS 19172 at *29-43. However, "[t]he court should not engage in a trial on the merits when examining the fairness of a proposed settlement because the very purpose of the compromise is to avoid the delay and expense of a trial." *Camp*, 2004 U.S. Dist. LEXIS 19172, at *29.

Plaintiffs face significant procedural risks that could endanger their chances of prevailing on the merits. The Plaintiffs signed arbitration agreements, which Sitemetric would seek to enforce absent this settlement. And even if Plaintiffs were able to invalidate the agreement and proceed in Federal Court, Plaintiffs face the risk of never having the FLSA collective or the Rule 23 class certified. Dunn Decl. ¶¶ 73-34; *see In re Heartland Payment Sys.,* 851 F. Supp. 2d 1040, 1066 (S.D. Tex. 2012) (considering the risk of maintaining a class under this factor).

Plaintiffs also face risk on the merits, particularly their ability to show that Plaintiffs were misclassified as independent contractors, which Sitemetric strongly contests. Dunn Decl. ¶ 72; *see Plunkett v. Firstkey Homes LLC,* 3:23 Civ. 2684-L-BN, 2024 U.S. Dist. LEXIS 224946, at *10 (N.D. Tex. Nov. 21, 2024) (finding settlement reasonable in a misclassification case). Such a finding could have resulted in the Class obtaining no damages at all after years of litigation.

### v.    Factor 5: The Range of Possible Recovery and Certainty of Damages

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ The Settlement Agreement

represents the Parties' compromise given these limitations. Nevertheless, Plaintiffs have secured

a substantial recovery, tolled the statute of limitations, and reached an agreement to reclassify

workers as employees. *See Reed*, 703 F.2d at 173 (considering injunctive relief under this factor).

### vi.    Factor 6: Opinions of Class Counsel, Named Plaintiff, and Class Members

When reviewing settlement agreements, courts are "entitled to rely upon the judgment of

experienced counsel for the parties ... [and] absent fraud, collusion, or the like, [courts] should be

hesitant to substitute [their] own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326,

1330 (5th Cir. 1977). Class Counsel have a positive opinion of the settlement. The Named

Plaintiff is pleased with the Settlement and together with Class Counsel, she believes this

Settlement is best for the Class as a whole. Dunn Decl. ¶ 62.

The class response has been overwhelmingly positive. More than 53% of the Plaintiffs

filed a claim form. Only one Plaintiff opted out. The only non-deficient objection does not object

to any of the settlement terms, but instead lodges complaints against Sitemetric and its labor

practices. The remaining deficient objection takes issue with the structured payments of the

disbursements, and the fact that the settlement does not address damages from December 2024.

However, structured payments were necessary due to Sitemetric's financial situation; based on

Class Counsel's assessment, the structured payments allowed for a greater recovery to the class

overall then would have been possible if all funds had to be dispersed immediately. And

Plaintiffs have not released any claims from December 2024, and are free to pursue them. *See*

S.A. § VI (releasing claims only through November 25, 2024). Class Counsel spoke with the

objector, and upon further explanation of the structured payments, she expressed that she found

them acceptable. Dunn Decl. ¶ 31. Class Counsel also spoke with numerous Plaintiffs about the settlement, and they voiced their support for the settlement. *Id.* ¶ 32.

**C.  The Settlement Is Fair and Reasonable and Was Reached as a Result of Contested Litigation to Resolve a Bona Fide Dispute**

FLSA settlements should be approved when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food,* 679 F.2d at 1353 n.8. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* "Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. Key-Bank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Id.*

**i.    The Settlement Resolves a Bona Fide Dispute**

"A court may approve a settlement 'in an employee FLSA suit [if it reflects] a reasonable compromise over issues . . . that are actually in dispute.'" *Jasso,* U.S. Dist. LEXIS 207043, at *4 (quoting *Lynn's Food,* 679 F.2d at 1354). A bona fide dispute exists when there is "some doubt" as to whether the plaintiffs would succeed on the merits through litigation of their claims. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008).

Here, there is no question that the Settlement resolves several bona fide disputes. Plaintiffs contend that they were misclassified and that Sitemetric was required to pay them the overtime premium pay. Sitemetric denies these allegations and argues that Plaintiffs are not entitled to overtime wages because it properly classified them as independent contractors. Dunn Decl. ¶ 72. This constitutes a bone fide dispute. *See Jasso,* 2022 U.S. Dist. LEXIS 207043, at *9 (finding a bona fide dispute where the parties disagree as to whether the plaintiffs "are exempt

19

from the overtime requirements of the FLSA"); *Shaw v. CAS, Inc.,* 5:17 Civ. 142, 2018 U.S. Dist. LEXIS 136394, at *3-4 (S.D. Tex. Jan. 31, 2018) ("An actual dispute over the amount of overtime compensation due to an employee is sufficient to create a bona fide dispute[.]").

Even if the Plaintiffs could establish that they were misclassified, the Parties would still dispute whether Plaintiffs are similarly situated. Dunn Decl. ¶ 62. *See Chano v. City of Corpus Christi,* 2:17 Civ. 141, 2019 U.S. Dist. LEXIS 153143, at *9 (S.D. Tex. July 11, 2019) ("[T]he likelihood of continued contested litigation and the uncertainty of its outcome is further reason to find a bona fide dispute exists."). Moreover, absent settlement, Sitemetric would attempt to enforce arbitration agreements against the claimants. Dunn Decl. ¶ 73; *See Shaw*, 2018 U.S. Dist. LEXIS 136394, at *4 ("[T]here is a bona fide dispute regarding whether arbitration agreements require Plaintiffs to arbitrate their claims on an individual . . . basis."). The Parties reached the Settlement in recognition of the uncertain legal and factual issues involved.

     **ii.    The Settlement Is Fair and Reasonable to the Employees**

For the same reasons as described above in the Rule 23 class action analysis, Section II, the Settlement is fair and reasonable. *See Chano*, 2019 U.S. Dist. LEXIS 153143, at *7 ("[T]he Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action.") (quotation omitted).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their Motion for Final Approval of the Class Settlement, instruct the Parties and Claims Administrator to implement the Settlement Agreement's terms, and enter the Proposed Final Approval Order attached as Exhibit 3.

Dated: June 6, 2025

*s/ Matt Dunn*_____
Matt Dunn
Whitney Flanagan
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Phone: (845) 255-9370
Fax: (845) 255-8649
mdunn@getmansweeney.com
wflanagan@getmansweeney.com

*Attorneys for Plaintiffs*


**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically transmitted the attached document

to the Clerk of Court using the ECF System for filing.


*s/ Matt Dunn*_____
Matt Dunn